UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DARRYL A.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CIVIL NO. 1:19cv163 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB), as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since August 28. 2015 (Ex.3D, 7D, 9D), the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: history of myocardial infarction (status post stenting in 2011), atherosclerotic heart disease (status post coronary artery bypass grafting time 4 in 2013), cardiomyopathy, left ventricular dysfunction, hyperlipidemia, hypertension, degenerative and discogenic changes in the lumbar and thoracic spine, cervical spondylosis, sleep apnea, COPD, history of right humerus fracture, obesity, anxiety, major depressive disorder, and PTSD (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 1567(a) except that he can only occasionally operate foot controls with his right lower extremity. He can frequently reach with his dominant right upper extremity (except that he can only occasionally reach overhead with his right upper extremity). He cannot climb ladders, ropes or scaffolds at all and he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He must avoid unprotected heights, moving mechanical parts, and operating a motor vehicle. He can tolerate occasional exposure to dusts, odors, fumes, and other pulmonary irritants. He is further limited to simple, routine, repetitive tasks with simple work-related decisions, frequent interaction with supervisors and co-workers, and occasional interaction with the public. He is able to tolerate occasional changes in a routine work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 18, 1969 and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 28, 2015, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 30-39 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on October 11, 2019. On November 21, 2019, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff has previous work as a fabricator and a forklift operator. Plaintiff claims he suffers from chronic coronary artery disease with myocardial infarction treated with left heart catheterization in 2011 and quadruple bypass surgery in November of 2013, cardiomyopathy, diabetes, hyperlipidemia, hypertension, chronic obstructive pulmonary disease, sleep apnea, obesity, fibromyalgia, chronic GERD, fatty liver, incontinence, degenerative disk disease in the lumbar, thoracic, and cervical spine, degenerative changes in the left shoulder post left glenoid fracture, right humerus fracture with ORIF, right hand/wrist problems (mild degenerative change of the 1st metacarpophalangeal joint inability to straighten the 3rd digit; Dupuytren's contracture release surgery), right knee problems/patella fracture, tarsometatarsal fractures with ORIF, major depressive disorder recurrent with psychotic features, anxiety, post-traumatic stress syndrome with delayed expression, and amphetamine abuse in remission.

On January 23, 2012, prior to the quadruple bypass surgery, the psychological consultative examiner opined that Plaintiff could concentrate and stay on task. On January 24, 2012, a psychological non-examining consultant concurred with the examiner's opinion. On March 30, 2016 and May 11, 2016, the psychological non-examining consultants identified sustained concentration and persistence limitations. In the "B' criteria, the psychological non-examining consultants graded "maintaining concentration, persistence or pace" as moderate. On March 14, 2016, about two and half years after the quadruple bypass surgery, the psychological consultative examiner opined that Plaintiff could concentrate and stay on task. Plaintiff was treated at Bowen Center (a community mental health center) for major depressive disorder, PTSD, and substance

abuse in remission from January 27, 2016 through April 8, 2016. Bowen Center noted in relation to concentration, "He appeared hypervigilant and reported hearing voices with multiple vegetative features of sleep and appetite disruptions, anhedonia and lack of motivation and concentration." Plaintiff was treated at Northeastern Center (a community mental health center) under the care of A.R. Recinto, M.D. (a psychiatrist) for major depressive disorder and PTSD from June 7, 2016 through July 11, 2017.

In support of remand, Plaintiff first argues that the ALJ's RFC analysis failed to incorporate all of his medical impairments. The RFC is the most an individual can do despite his limitations. 20 C.F.R. § 404.1545(a). An ALJ assesses a claimant's RFC based on all of the relevant evidence in the claim file at the time he or she makes a decision, including the objective medical evidence, medical source opinions and observations, and a claimant's own statements about his limitations. *Id*. Although the ALJ is responsible for assessing a claimant's RFC, the claimant has the burden of showing how his impairments limit his functioning. *See* 20 C.F.R. § 404.1512(a)(1); *see also Abbett v. Berryhill*, No. 1:17-CV-232-TLS, 2018 WL 3018967, at *5 (N.D. Ind. June 18, 2018) (holding that the plaintiff has the "burden to come forward with evidence of her limitations.").

Here, the ALJ considered Plaintiff's treatment records and the opinions in the record, as well as Plaintiff's subjective statements and activities when assessing Plaintiff's RFC (Tr. 33-37). Based on the record in its entirety, the ALJ found that Plaintiff had moderate difficulties in concentration, persistence, or pace at step three of the sequential evaluation process, and then incorporated mental limitations in the RFC finding (Tr. 33-34). Specifically, the ALJ limited Plaintiff to simple, routine, repetitive tasks with simple work-related decisions; frequent

interaction with supervisors and co-workers, and occasional interaction with the public; and he could tolerate occasional changes in a routine work setting (Tr. 33-34).

Relying on *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014), Plaintiff argues that the ALJ's RFC finding and hypothetical question to the vocational expert did not adequately account for his moderate limitations in concentration, persistence, or pace. Plaintiff does not suggest what additional limitations related to concentration, persistence, or pace should have been included in the RFC.

In *Yurt*, the Court found that the ALJ's hypothetical question was problematic because it did not limit the claimant to low stress positions "or otherwise capture his moderate difficulties;" it merely limited the claimant to unskilled tasks. *Id*. More recent Seventh Circuit decisions have confirmed that there is no categorical rule barring an RFC for simple, routine, and repetitive tasks for someone with a moderate limitation in concentration, persistence, or pace. *See Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019); *Burmester v. Berryhill*, 920 F.3d 507 (7th Cir. 2019).

The ALJ in the present case considered Plaintiff's report that he had difficulty concentrating, getting along with others, and handling stress and changes in routine (Tr. 34, 322-23, 1093-94). Similarly, Plaintiff's aunt indicated that he is easily distracted and agitated, and that he has difficulty concentrating and handling stress and changes in routine (Tr. 34, 331-34).

The ALJ recognized that Plaintiff was diagnosed with anxiety, major depressive disorder, and PTSD (Tr. 35, 1150). Plaintiff received outpatient treatment at the Bowen Center and at Northeastern Center during the period at issue (Tr. 35, 1145-59, 1188-1204, 2049-2128). The ALJ also recognized that mental health records indicate that Plaintiff had a depressed and anxious mood, irritability, anger, agitation, poor grooming, flat/restricted affect, ruminations, slowed

speech, poor insight and judgment, a negative attitude, avoidance and guarded behavior and attitude, hypervigilance, restlessness, paranoia, difficulty with serial seven subtractions, and a mildly below normal short-term memory (Tr. 37, 1093-96, 1145, 1154, 1158, 1326, 1330-31, 1340-41, 1344, 1349-50, 1389-91, 2052, 2055, 2058, 2061, 2063, 2066, 2069, 2072, 2076, 2079, 2084, 2086, 2089, 2091, 2104-05, 2114-16, 2124-26). Other records described Plaintiff as being alert, well-groomed, and/or oriented; he was able to follow simple instructions and directions; he denied having suicidal ideations; and/or he exhibited a normal/appropriate mood, affect, behavior, thought content, and/or judgment (Tr. 37, 525, 529, 601-02, 609, 973, 984, 987-88, 994, 999, 1002, 1005, 1010, 1013, 1025, 1044, 1049, 1084, 1178, 1184, 1220, 1224, 1320, 1237, 1299, 1322, 1420, 1456, 1496-97, 1615, 1698, 1733, 1794, 1835, 2001). As the ALJ noted, there is no evidence that Plaintiff has been hospitalized on an inpatient basis for a psychiatric reason since the alleged onset date (Tr. 36).

The ALJ also considered opinion evidence addressing Plaintiff's mental functioning. For example, the ALJ considered the March 2016 consultative examination report of Dan L. Boen, Ph.D. (Tr. 36-37, 1093-96). Dr. Boen's report indicates that Plaintiff was cooperative and fully oriented; he was responsive in his speech; his mood was depressed and his affect was flat, but his behavior was normal; his concentration was mildly below normal; his immediate recall was normal; his short term memory was mildly below normal; his long term memory was normal; his fund of information and intelligence level were normal; and his insight and judgment were normal (Tr. 1095).

Dr. Boen diagnosed Plaintiff with the following: major depressive disorder, recurrent episode, with psychotic features; generalized anxiety disorder; and mild cannabis use disorder

8

(Tr. 1095). Dr. Boen opined that Plaintiff can understand and remember what he was asked to do on a job; he would be able to concentrate on a job; he would be able to stay on task; he would be able to get along with coworkers; and he would be able to get along with a boss (Tr. 1096). As the Commissioner points out, the ALJ's RFC finding is generally consistent with Dr. Boen's opinions (Tr. 37).

The ALJ also considered the opinions of the State agency psychological consultants who evaluated Plaintiff's records at the initial and reconsideration levels of administrative review (Tr. 37, 122-23, 137-29, 141-42). In March 2016, Kari Kennedy, Psy.D., determined that Plaintiff had moderate restrictions in social functioning and in concentration, persistence, or pace (Tr. 123). Nevertheless, Dr. Kennedy opined that Plaintiff could understand, carry out, and remember simple instructions; he is able to make judgments commensurate with functions of unskilled work; he is able to respond appropriately to brief supervision and interactions with coworkers and work situations; and he is able to deal with changes in a routine work setting (Tr. 129). Dr. Kennedy further noted that Plaintiff may prefer to work in a position that requires minimal interaction with others (Tr. 129). In May 2016, B. Randal Horton, Psy.D., affirmed Dr. Kennedy's opinion as written (Tr. 146-48).

The ALJ explained that his assessed RFC finding was generally consistent with or slightly more restrictive than the opinions of the psychological consultants that Plaintiff could perform simple, unskilled work (Tr. 37). The ALJ recognized that the psychological consultants also indicated that Plaintiff could have only minimal interaction with others (Tr. 37, 129, 148). However, as the ALJ noted, Plaintiff was usually described by medical sources as being alert and/or oriented and/or as exhibiting a normal/appropriate mood, affect, and/or behavior (Tr. 37).

9

In light of that evidence, the ALJ found that Plaintiff was able to frequently interact with co-workers and supervisors and occasionally interact with the public (Tr. 37).

This case is distinguishable from *Crump v. Saul*, 932 F.3d 567 (7th Cir. 2019), upon which Plaintiff relies. In *Crump*, the Court highlighted the ALJ's apparent recognition of the claimant's concentration, persistence, or pace difficulties when he incorporated specific functional limitations into a second hypothetical question asked to a vocational expert – being off-task 20% of the time or otherwise requiring two unscheduled absences per month – factors that were largely based on the opinion of the claimant's treating psychiatrist. Critically, however, the ALJ in *Crump* failed to acknowledge the vocational expert's response to that hypothetical (that a person so limited would lack the functional capacity to sustain any employment). *Id*. at 570. Further, the Court found that the ALJ improperly discounted the treating psychiatrist's opinion, which was supported by the opinion of another medical source. *Id*. at 571-72. The Court held that the ALJ's failure to incorporate the vocational expert's opinion anywhere in the RFC left the RFC "altogether uninformed by considerations of off-task time or unplanned leave." *Id*.

In the present case, however, Plaintiff does not point to particular evidence from a medical source that would support further limitations relating to staying on task or unplanned absences. To the contrary, Dr. Boen opined that Plaintiff could understand and remember what he is asked to do on a job; he could concentrate on the job; and he would be able to stay on task (Tr. 1096). Nor did Plaintiff testify to any particular limitations in his abilities related to concentration, persistence, or pace (Tr. 88-105). Unlike in *Crump*, the ALJ here did not "suppl[y] a deficient basis for the [vocational expert] to evaluate [Plaintiff's] impairments." *Id*. at 570-71. Plaintiff's reliance on *Crump* is misplaced.

Plaintiff has failed to file a reply addressing the issues that the Commissioner has brought up in response to Plaintiff's arguments. Notably, Plaintiff fails to explain what limitations should have been included in the RFC to accommodate his moderate limitations in concentration, persistence and pace. Also, Plaintiff fails to point to any medical evidence supporting any additional RFC limitations, even after this deficiency was brought up in the Commissioner's response.

Accordingly, this court finds that the ALJ appropriately relied on the substantial evidence discussed above to support his RFC finding.

Next, Plaintiff argues that the ALJ overemphasized his daily activities when evaluating his ability to work. When assessing the extent to which a claimant's subjective complaints limit his capacity for work, the ALJ considers (among other factors) the claimant's daily activities. 20 C.F.R. § 404.1529(c)(3)(i). Here, the record shows that Plaintiff lived with his aunt; he independently handled his personal care needs (though he indicated that it takes him longer to do tasks than it used to); he did light housekeeping; he cooked light meals; he spent time with his cousin and nephew; he checked dating websites; he played Solitaire and watched television; he washed laundry; he could handle financial matters (including using a checking account/money orders); he went out alone; and his ability to follow instructions was described as "fine," "fair," or "well" (Tr. 33, 36, 89, 97-99, 103-04, 317-22, 327-32). The psychological consultants determined that Plaintiff had only a mild restriction in his activities of daily living (Tr. 123, 141).

The ALJ appropriately considered this evidence as one factor, along with the rest of the relevant medical and non-medical evidence of record, when assessing Plaintiff's functional abilities (Tr. 33-37). The ALJ summarized Plaintiff's statements about his daily activities, but did

not infer from those statements that he could perform full-time work (Tr. 35). The ALJ did not consider Plaintiff's activities dispositive of the issue of disability, but when he considered them in conjunction with the other evidence in the record, he found that further RFC restrictions were not warranted (Tr. 34-37). *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("The ALJ did not equate [the plaintiff's] ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limited effects of her symptoms . . . ."); *see also Irwin v. Berryhill*, No. 1:17-cv-00408-SLC, 2018 WL 5873877, at *12 (N.D. Ind. Nov. 8, 2018) (the ALJ did not improperly "overemphasize" Plaintiff's activities of daily living, he "properly cited them as one factor when building an accurate and logical bridge between the evidence of record and his conclusion about [her] symptom testimony, and his conclusion is not patently wrong").

Despite finding that the evidence was not entirely consistent with Plaintiff's subjective complaints, the ALJ nonetheless assessed a RFC finding for work at the sedentary exertional level with additional postural, manipulative, environmental, and mental limitations (Tr. 33-34). The ALJ did not ignore possible limitations on how Plaintiff performed his activities, but he considered the record as a whole when assessing his ability to perform a range of unskilled, sedentary work. *See Juzysta v. Berryhill*, No. 1:18-cv-4-TLS, 2019 WL 762509, at *5 (N.D. Ind. Feb. 21, 2019) (the ALJ did not ignore qualifications as to how the claimant carried out her activities; rather, the ALJ reasonably considered the activities in evaluating the effect of the claimant's impairments on her ability to perform unskilled, light work). Plaintiff herein fails to explain how the ALJ "overemphasized" his daily activities. Plaintiff merely states that the ALJ's analysis was "cursory".

As there is no evidence that the ALJ improperly emphasized any of Plaintiff's daily activities, or held that the daily activities translated into the ability to do full-time work, Plaintiff's argument fails. As there is no basis for remand, the ALJ's decision will be affirmed.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: January 27, 2020.

s/ William C. Lee
William C. Lee, Judge
United States District Court